Filed 9/4/14  P. v. Crites CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JASON CARL CRITES,<br><br>        Defendant and Appellant. | A140741<br><br>(Contra Costa County<br>Super. Ct. No. 51309681) |

Counsel appointed for defendant Jason Carl Crites has asked this court to independently examine the record in accordance with *People v. Wende* (1979) 25 Cal.3d 436, to determine if there are any arguable issues that require briefing.  Defendant was informed of his right to file a supplemental brief, but he elected not to do so.  We have conducted that review, conclude there are no arguable issues, and affirm.

## BACKGROUND

A jury found defendant guilty as charged with one count of second degree burglary and one count of receiving stolen property (Pen. Code, §§ 459, 460, subd. (b), 496, subd. 9a)). Following receipt of the verdicts and discharge of the jury, defendant admitted enhancement allegations that he had three prior convictions, and that he committed one of burglaries while on release from custody (Pen. Code, §§ 1203, subd. (e)(4, 12022.1).  The trial court sentenced defendant on the burglary count to two years in the county jail, and suspended execution of a third year.  The court initially imposed the same sentence on the receiving count, which it ordered to be served concurrently.  However, the prosecutor reminded the court that "If you have a burglary

1

. . . and then possession of property taken from that burglary, I believe under [Penal Code section] 654, that sentence on the possession charge should be stayed," to which defense counsel stated "I 100 percent agree." The court thereupon changed the sentence on the receiving count: "I will take both of your suggestions into account and rather than impose a concurrent sentence on Count Two, I will stay imposition of a sentence on Count Two pursuant to . . . Penal Code . . . 654 and not impose a sentence at this time on Count Two."

The brief filed by appointed counsel contains an exhaustive summary of the evidence received at defendant's trial. That summary is so comprehensive and even handed that, with minor nonsubstantive changes, we adopt it as our own:

"Mary Perez is a retired airline employee who volunteers for Christmas for Everyone (CFE), a project she started 28 years ago that feeds 3,000 working poor on Christmas, along with Meals On Wheels clients. CFE has a storage facility at 1801 Shell Avenue in Contra Costa County where it stores CFE equipment, Alhambra Grad Night items, equipment from other projects, and personal property of Perez and a friend of hers, Richard Jordan. CFE pays no rent for the warehouse and is uninsured. The large building contained four rooms and Perez segregated items in the warehouse by project and by item. Some of the items were donated, others purchased. There was no written inventory. Along with Perez, Karen Ramos and Cathy McRoberts were on a committee, and those individuals knew what was there, and had receipts for some items.

"Prior to the incident [i.e., the burglary], she had last been to the warehouse around February 11, 2013; at the time she had locked and secured the building, which had an alarm system but no surveillance equipment. A person had to go through two gates, the second one locked, in order to reach the warehouse. Crites did not have permission to be in the warehouse.

"On February 24, 2013, after receiving notice of a break-in, Perez visited the warehouse, where she discovered a hole had been cut in the back of the building and things were missing, including most of CFE's equipment, Grad Night items, personal property of hers, and Mr. Jordan's personal property. Items that remained behind were

2

broken and thrown into piles or placed in boxes.  Mr. Jordan's things, which had been neat and in order, were destroyed.  In addition to the hole, she discovered that the chain on the second gate had been broken, the alarm system disabled and electricity cut-off.

"Perez was at the Concord flea market on March 3, 2013, when she saw some of the missing items being sold by a man named Frank Mireles.  According to Mireles, Crites had given the items to Mireles sometime before the flea market as thanks for helping Crites move some other things.  The items given to Mireles, and the items he helped Crites move to Crites's home on Camino Del Sol, were at a warehouse on Shell Avenue, which Mireles believed was a public auction or storage.  Crites and Mireles made at most two trips there, both on the same day.  They entered the warehouse during the daytime through an unlocked side door, not through a hole.  Crites had told Mireles they were going in to get some speakers, and he helped Crites move a desk, among other items.

"When Mireles tried to leave the flea market, Perez stood in front of the van and said the items he was selling were hers.  Mireles gave Perez all the items that she said were hers, wrote her a letter of apology, and ultimately pled no contest to receipt of stolen property.  Mireles also had items from the warehouse at his house on Morelo Avenue, which was close to the warehouse, including two large box speakers, jackets, and other items.  He denied knowing the items were stolen.

"According to Detective Robert Rector, Mireles admitted that the items were stolen, acknowledged that Crites had shown him a hole that Crites had used to enter the warehouse, and that Crites had said he had cut the power.  Mireles also told Rector that Crites had sold a pool table Mireles had helped him move.

"Perez called the sheriff's department.  Later that day, Perez went with a deputy to the Martinez home of Crites's mother, Karen Esquivel, where Perez saw some of the items that had been taken from the warehouse in the backyard, side yard and house.  Esquivel was living there with Scott Goldie, Vickie Antonelli, and sporadically Crites, though Crites was living occasionally with John Vaughn.  Two weeks earlier, Esquivel had discovered material in her shed that was not hers and called the sheriff herself, but

when deputies came out they said 'there's not been any report of anything.' At some point Goldie saw Crites moving some furniture from a van into one of the sheds on the property, and saw some chairs on the property.

"On March 3, Esquivel drove up to her house in the evening to find Perez and deputies in the driveway. Esquivel gave Perez permission to walk the property and remove anything that was hers. Perez recognized plastic tubs marked 'CFE' as belonging to CFE, along with tables and chairs, canisters that she had collected, barrels, a pool table light, a Christmas tree, a hutch, and a tire from Mr. Jordan's bicycle. Perez had a portable storage unit delivered to her house to store the materials taken from the Esquivel house; she photographed the items and eventually returned them to the warehouse or put them in Perez's garage. According to Esquivel, many of the items claimed by Perez were actually owned by Esquivel. Antonelli had a conversation with Perez about old records and a phonograph that were there, which Perez said she did not want at that time.

"Detective Michael Rector was the lead detective for the investigation regarding break-ins at the warehouse. As part of the investigation, and pursuant to a search warrant, Rector and Sergeant Marc Andaya searched a house on Villa De Flores in Martinez where Crites lived with Vaughn and several roommates. When they arrested Crites there on March 8th, Crites had in his pocket the keys to the northeast bedroom, which was determined to be his room. Officers found tools and a box of Christmas decorations in that room, along with a dolly in the driveway and barrels in the backyard that were consistent with items alleged to be stolen.

"Perez, who accompanied two detectives to the house, said she recognized a set of Christmas dishes, some clothing, a dolly, tools, plastic ware, paper cups, packaging tape, more plastic bins, and some tables that were missing from the warehouse. Vaughn said that Crites had brought him a set of plates that was apparently returned to Perez. Perez claimed that a ladder and other property of Vaughn's also belonged to her, and Vaughn believed the deputies took a chain saw that belonged to a friend of his, along with tools owned by Vaughn.

4

"In March 2013, Suzanne Harman and Ray Moultrie were living together in a house on Pacheco Boulevard about a block from the warehouse. Crites, who was friends with Moultrie, left some items at their house as gifts, and later told her he had burglarized a warehouse. Rector visited Harman and told her Moultrie was involved in the warehouse break-in with Crites, which made her nervous. She realized she might have some of the stolen items, and gave Rector the things left by Crites, which included clothing, some toiletries, shaving cream, six rolls of tape, a roll of garbage bags, and makeup.

"According to Rector, Harman said Crites had bragged about breaking into a warehouse, but she had not realized the items were from the warehouse. Rector also spoke to Moultrie, and found boxes and bags of property, including an old record player and picture frames, in a vacant lot next to Moultrie's property, where he had thrown them after becoming suspicious they might be stolen. Rector brought Perez boxes of clothing, tape, a radio and sets of shaving cream that were purchased for homeless men. According to Rector, Moultrie also said Crites had bragged about breaking into the warehouse, though Moultrie did not know the details.

"During a conversation in July 2013 . . . , Crites acknowledged that records found in the shed at his mother's house belonged to Perez and had been there when the officers searched in March 2013. Perez made a list of missing items, and discovered additional items as time went on. She may never have a complete list, but she gave the sheriff's department a list of the items she believed had been taken in the first break-in. Rector said Perez compiled a list of the things that had been returned, and was continuing to compile a list of items stolen. The sheriff's department itself did not create a detailed, itemized inventory of the property purportedly stolen, and simply released items identified by Perez back to her. Perez claimed to be missing cooking pots, barrels of coats and presents for the children, new blankets, canned goods, buckets of batteries, chafing dishes, ice chests and three E-Z pop-up tents. CFE had 68 new tables and 168 new chairs that were also missing.

"Altogether, deputies recovered approximately four truckloads of items that were returned to Perez, including a refrigerator. Perez denied that she recovered anything of value, and claimed most of it was unusable. Rector could not recall if any items were booked into evidence, other than CDs."

## REVIEW

Defendant was at all times represented by competent counsel who ably protected his interests. In fact, counsel persuaded the jury to acquit defendant on other burglary-receiving charges.

A number of prosecution witnesses—Suzanne Harman, Raymond Moultrie, and Frank Mireles—testified under a grant of immunity. The prosecutor's showing for the grant complied with Penal Code section 1324. Defense counsel was not ineffective for not opposing the prosecution's petitions.

The jury's verdict is supported by substantial evidence.

No ruling by the trial court admitting or denying evidence amounted to an abuse of discretion.

No improper or inappropriate instruction was given to the jury.

After reading the transcript of defendant's sentencing, we were concerned that the court might have run afoul of the principle that where the charge of receiving stolen property is based on the same theft underlying a burglary charge and both offenses are committed with a single intent, the defendant may be convicted of both offenses, but he can be punished for only one of the offenses, and the sentence for the other must be stayed pursuant to Penal Code section 654. The correct procedure is to impose sentence on both, but to stay execution of one. (*People v. Allen* (1999) 21 Cal.4th 846, 866-867.) However, the abstract of judgment shows that defendant was convicted of "Receiving Stolen Property," for which he was sentenced to the "U[pper] Term" of three years, and that that sentence was given a "654 stay." This parallels the minutes, which shows Count 2 . . . aggravated term—stayed per PC 654." In these circumstances, and to avoid a pointless remand for resentencing, the abstract and the minutes will be taken as the more accurate reflection of the trial court's sentencing choice. (See *People v. Cleveland*

6

(2004) 32 Cal.4th 704, 768 [correct sentence shown by abstract & minutes]; *People v. Thompson* (2009) 180 Cal.App.4th 974, 978 [same].)

## DISPOSITION

The judgment of conviction is affirmed.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.